UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CORDERRELL W.,[1] ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARTIN J O'MALLEY, ) <br> ) <br> Defendant. ) | No. 1:23-cv-00731-RLY-CSW |

### REPORT AND RECOMMENDATION ON JUDICIAL REVIEW OF THE COMMISSIONER'S DENIAL OF BENEFITS

This matter is before the Honorable Crystal S. Wildeman, United States Magistrate Judge, pursuant to an Entry Referring Matter to Magistrate Judge, to conduct and issue a report and recommendation regarding the appropriate disposition of this matter. (Dkt. 10). Claimant, Corderrell W., seeks judicial review of the Social Security Administration's ("SSA") decision denying his applications for Child's Insurance Benefits and Title XVI Supplemental Security Income. (Dkt. 1). Claimant argues that the Administrative Law Judge ("ALJ") committed reversible error. For the following reasons, the Magistrate Judge recommends that the ALJ's decision be **AFFIRMED**.

I.   **BACKGROUND**

On April 6, 2020, Claimant filed applications for child's insurance benefits and a Title XVI supplemental security income. (Dkt. 8-5 at 2-15; R. 246-59). Claimant's applications were initially denied on October 1, 2020, and denied again upon reconsideration on January 21, 2021. (Dkt. 8-4 at 6-13, 31-45; R. 128-35, 153-67). Claimant then filed a request for an administrative hearing. (Id. at 49-51; R. 171-73).

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

On April 15, 2022, Claimant appeared telephonically at a hearing due to the COVID-19 pandemic. (Dkt. 8-2 at 52-84; R. 51-83). Thereafter, the ALJ issued her decision denying Claimant's requests for benefits. (*Id.* at 30-44; R. 29-43). The ALJ applied the five-step sequential evaluation process to determine whether the Plaintiff met the standard for "disabled" as defined under the Social Security Act. (*Id.*).

In her decision, the ALJ found that:

- At Step One, Claimant engaged in substantial gainful activity[2] during the following periods: October 2020 to December 2020 and July 2021 to August 2021. (*Id.* at 34; R. 33). However, the ALJ also found that there had been a continuous 12-month period where Claimant did not engage in substantial gainful activity. (*Id.*).

- At Step Two, Claimant had the following severe impairments: Mental impairments with a diagnosis of mild intellectual disability, generalized anxiety disorder (GAD), and attention deficit hyperactivity disorder (ADHD). (*Id.*).

- At Step Three, Claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.* at 35; R. 34).

- After Step Three but before Step Four, Claimant had the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations: simple, routine, and repetitive tasks that are not production rate paced (i.e. – assembly line work); can use judgment and deal with changes in a work setting consistent with work that is simple, routine, and repetitive and not production rate paced; the Claimant can have frequent interaction with supervisors and coworkers; and occasional interaction with the public. (*Id.* at 38; R. 37).

- At Step Four, Claimant has no past relevant work because he performed his work at Popeyes during the relevant period, thus

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572.

2

- At Step Five, considering the Claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (*Id.*).

Ultimately, after engaging in the five-step analysis, the ALJ concluded that Claimant was not disabled as defined under sections 223(d) and 1614(a)(3)(A) of the Social Security Act. (*Id.* at 44; R. 43).

## II. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 587 U.S. ----, 139 S.Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d

disqualifying that work at past relevant work. (*Id.* at 43; R. 42).

3

639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted).[3] "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform her past relevant work and, if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920.

---

[3] The Code of Federal Regulations contains separate, parallel sections concerning SSI and disability insurance benefits ("DIB"), which are identical in most respects. Cases may reference the section pertaining to DIB, such as in *Clifford*, which cites 20 C.F.R. § 404.1520. 227 F.3d at 868. Generally, a verbatim section exists establishing the same legal point with both types of benefits. *See, e.g.*, 20 C.F.R. § 416.920. The Court will usually not reference the parallel section but will take care to detail any substantive differences applicable to the case.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

### III. DISCUSSION

Here, Claimant seeks to reverse the ALJ's decision denying disability benefits under the Social Security Act. (Dkt. 1). Specifically, Claimant raises two contentions: (1) that the ALJ's analysis of Listing 12.05 is not supported by substantial evidence; and (2) that the ALJ's treatment of Dr. Sprinkle's opinion was inconsistent with her decision. (Dkt. 10). In response, the Commissioner argues that the ALJ's determinations were reasonable given the evidence produced by Claimant and that the ALJ is not required to include a consulting physician's entire opinion into the residual functional capacity ("RFC"). (Dkt. 13). The undersigned's review of the record reveals that the ALJ's decision was supported by substantial evidence as outlined below.

#### A. The ALJ's Analysis of Claimant's Listing 12.05 Impairments

First, Claimant alleges that his impairments under Listing 12.05 were enough to qualify for benefits under the third step of the evaluation process. (Dkt. 10). To succeed in his appeal, Claimant must have " an impairment or combination of impairments, that meets or equals an impairment found in the Listing of Impairments." *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999). Claimant was diagnosed with mild intellectual disability, generalized anxiety disorder (GAD) and attention deficit hyperactivity disorder (ADHD). (Dkt. 8-7 at 206, R. 579). Claimant argues he qualifies for Social Security benefits for his intellectual disorders. (*Id.*). Listing 12.05 provides that in order to meet the requirements for a

disabling intellectual disorder, applicants must have "significantly subaverage general intellectual functioning, significant deficits in current adaptive functioning, and manifestation of the disorder before age 22." 20 C.F.R. § 404, Subpt. P, App'x 1 §12.05(a). The claimant bears the burden of proving that he meets all of the criteria for his impairments under the Listing. *Prill v. Kijakazi*, 23 F.4th 738, 747 (7th Cir. 2022).

Here, the ALJ found that Claimant did not have "significant deficits in adaptive functioning as he reported [because] he is able to manage his own personal care, prepare simple meals, clean, wash dishes, wash laundry, and work part-time." (Dkt. 8-2 at 37; R. 36). Subsections A and B of the disability evaluation provide guidance on how to accurately evaluate whether a claimant meets the requirements for significant deficits in adaptive functioning. 20 C.F.R. 404, Subpt. P, App'x 1 § 12.00(H)(3). To establish significant deficits in adaptive functioning, the claimant must prove under Paragraph A, dependence upon others for personal needs (for example, toileting, eating, dressing, or bathing), or under Paragraph B, extreme limitation of one, or marked limitation of two, mental functioning areas. *Id.* The mental functioning areas that the ALJ must assess are a claimant's ability to: "(a) Understand, remember, or apply information; (b) Interact with others; Concentrate, persist, or maintain pace; and Adapt or manage oneself." *Id.* Listing 12.05 also states that the ALJ "will base [her] conclusions about [claimant's] adaptive functioning on evidence from a variety of sources . . . and not on [claimant's] statements alone." 20 C.F.R. 404, Subpt. P, App'x 1 § 12.05(H)(3)(a).

In her decision, the ALJ cites to record evidence that Claimant worked thirty to thirty-five hours parttime at a Popeyes fast-food restaurant during his period of disability. (Dkt. 8-2 at 42; R. at 41). The Popeyes' general manager stated that Claimant was able to take orders, handle money transactions, make food, clean dishes, and clean the restaurant. (Dkt. 8-2 at 42, R. at 41). While the general manager stated that Claimant "[h]as no problem carrying out instructions," the ALJ acknowledged that Claimant would also get stressed while working with others. (*Id.*; Dkt. 8-6 at 49, R. at 49). When asked about Claimant's response to a change in

6

the work setting, the general manager stated that "[h]e seems to accept it as good or better than others." (Dkt. 8-6 at 49, R. 49). Claimant argues that the ALJ failed to address details concerning work activity; however, that argument fails upon review of the ALJ's decision. The ALJ's mention of and consideration of these statements demonstrate that she did not ignore evidence contrary to her ultimate conclusion; instead, she took it into account and determined that the weight of the evidence did not suggest that Claimant must depend on others or have a significant defect in his mental functioning.

Claimant also challenges the ALJ's conclusion that Claimant did not have significant defects in adaptive functioning because he points to evidence that suggests he struggles to complete domestic activities.[4] (Dkt. 10). However, the ALJ raises these statements directly in her decision. (Dkt. 8-2 at 37-38, R. 36-37). After consideration, the ALJ found the Aunt's statements concerning Claimant's domestic activities "inconsistent with the record." The ALJ cited to a psychological evaluation report from the Indiana Department of Education ("Doe") that describes how Claimant "does not need support to live on his own in the future" and "demonstrates the ability to live on his own." (Dkt. 8-2 at 36, R. 37; Dkt. 8-7 at 21, R. 394). The ALJ need not discuss every piece of evidence, nor give full credit to Claimant's own testimony or view of the evidence. Here, the ALJ considered the statements from Claimant's Aunt and found them not as persuasive as statements from Claimant's general manager. The ALJ also factored that testimony in when considering the medical evidence and the DOE evidence in the record. (Dkt. 8-2 at 38-39, R. 37-38). Therefore, the ALJ's Listings determination was supported by substantial evidence, and her finding that Claimant did not have significant defects in his adaptive functioning is reasoned.

---

[4] Claimant argues that the ALJ failed to address statements from his Aunt that he: (1) requires reminders to tend to his personal hygiene, (2) must be monitored when cooking meals, (3) needs prompting to complete chores, and (4) does not understand the value of money when shopping. (Dkt. 10).

7

B.     The ALJ's Analysis of the Consultive Examiner's Opinion

Next, Claimant argues that the ALJ's decision was inconsistent with the medical opinion of clinical psychologist Dr. Melissa D. Sprinkle. (Dkt. 10). Claimant specifically points to the Medical Source Statement, in which Dr. Sprinkle made several observations that Claimant may require more supervision, guidance, and training in order to "perform very simple daily and work activities." (Dkt. 10). These opinions—Claimant argues—do not support the ALJ's denial of benefits. The Commissioner responds that the ALJ is solely responsible for determining the Claimant's RFC and that the ALJ did consider Dr. Sprinkle's whole opinion. (Dkt. 13).

While it is true that the ALJ found Dr. Sprinkles' report persuasive and that Dr. Sprinkle identified the difficulties that Claimant may face concerning his work activities, the ALJ was not required to "incorporate [Sprinkle's] entire opinion into her RFC." *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014). Notably, Dr. Sprinkles' report also contained information mitigating Claimant's possible difficulties at work. In other words, Dr. Sprinkle's report supports the ALJ's decision. (Dkt. 8-7 at 205-12, R. 578-85). Dr. Sprinkle identified Claimant's admission that he can count money and make change, which was consistent with the Popeye's general manager's testimony. (*Id.*). Under the Clinical Impressions section, Dr. Sprinkle opines that Claimant has intellectual abilities in the Extremely Low Range, and that "further evaluation would be needed to confirm" a diagnosis for intellectual disability. (*Id.*). The ALJ directly addresses the report, noting that Dr. Sprinkle also concluded that Claimant could follow simple directions and process basic information. (Dkt. 8-2 at 42, R. 41). Thus, even though the ALJ did not incorporate all findings of Dr. Sprinkle's report or specifically interpret the report the way the Claimant deems is appropriate, the ALJ reasonably supported her RFC conclusion.

Moreover, Dr. Sprinkle's report could reasonably be interpreted to mean that Claimant has intellectual challenges but not ones that meet the requirements under

8

the Social Security Act for benefits. Therefore, the undersigned finds that the ALJ properly concluded that Claimant could successfully be employed with simple work.

### IV. CONCLUSION

For the foregoing reasons, the Magistrate Judge **RECOMMENDS** the ALJ's decision be **AFFIRMED**.

Any objection to this Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Any party shall have fourteen (14) days from the date of service to file written objections to this Report and Recommendation.

**IT IS SO RECOMMENDED** this 12th day of June 2024.

*Crystal S. Wildeman*
Crystal S. Wildeman
United States Magistrate Judge
Southern District of Indiana

Distribution:

Drew Meyer
Social Security Administration
drew.meyer@ssa.gov

Jonelle L. Redelman
REDELMAN LAW LLC
jonelle@redelmanlaw.com

Julian Clifford Wierenga
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
julian.wierenga@usdoj.gov